**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

JUSTIN WEBER,

    Plaintiff,

  v.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

Case No. 1:12-cv-550

Spiegel, J.
Bowman, M.J.

**REPORT AND RECOMMENDATION**

Plaintiff Justin Weber filed this Social Security appeal in order to challenge the Defendant's finding that he is not disabled. *See* 42 U.S.C. §405(g). Proceeding through counsel, Plaintiff presents three claims of error for this Court's review. As explained below, the ALJ's finding of non-disability should be REVERSED, because it is not supported by substantial evidence in the administrative record.

**I. Summary of Administrative Record**

Plaintiff filed an application for disability insurance benefits ("DIB") in January 2009, alleging a disability onset date of December 15, 2008 due to a combination of mental and physical impairments, including a kidney disorder, depression, and anxiety. After his application was denied initially and on reconsideration, he requested a hearing de novo before an Administrative Law Judge ("ALJ"). On March 31, 2011, an evidentiary hearing was held before ALJ Kenneth Wilson. Plaintiff appeared with counsel and provided testimony, as did a vocational expert. (Tr. 33-86). On April 28, 2011, the ALJ denied Plaintiff's application in a written decision. (Tr. 16-28).

The record reflects that Plaintiff was 29 years old at the time of the hearing, with a high school education and some college, short of a degree. His past relevant work experience includes jobs as an office clerk, administrative clerk, and server, but he has not engaged in substantial gainful activity since his alleged disability onset date. Plaintiff's last insured date is March 31, 2012. (Tr. 18). The ALJ determined that Plaintiff had severe impairments of "loin pain-hematuria syndrome (LPHS) and depression." (*Id.*). However, neither of those impairments, alone or in combination, met or medically equaled one of the listed impairments in 20 C.F.R. 404, Subpart P, Appendix 1. (Tr. 21). Based upon the record presented, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform sedentary work, with the following additional restrictions:

> [H]e can only occasionally stoop, kneel, or climb ramps or stairs; never crawl or climb ladders, ropes, or scaffolds; only frequently balance; he must avoid concentrated exposure to pulmonary irritants such as dust, fumes, or gases; and he must avoid more than moderate exposure to unprotected heights or dangerous moving machinery. He can maintain attention and concentration for two hours across a normal weight-hour [sic] workday with normal breaks. He can understand, remember, and carry out simple tasks and instructions, but not complex instructions. He can interact appropriately with co-workers, supervisors, and the general public. He can also adapt adequately to changes in the work setting. The claimant also experiences mild to moderate pain.

(Tr. 22-23). Although Plaintiff was not able to perform his past relevant work, the vocational expert testified that an individual with the same vocational profile and RFC would still be able to perform "jobs that exist in significant numbers in the national economy," including the representative unskilled occupations of clerical support, and surveillance systems monitor (Tr. 26-27). Therefore, the ALJ determined that Plaintiff was not disabled. (Tr. 28).

The Appeals Council denied Plaintiff's request for review, leaving the ALJ's decision as the Defendant's final determination. On appeal to this Court, Plaintiff contends that the ALJ erred: (1) by determining that Plaintiff could sustain full-time work, without addressing his need to miss work for treatment and/or pain; (2) by failing to give controlling weight to his treating physician's RFC; and (3) by improperly assessing Plaintiff's credibility with respect to his allegations of disabling pain. While relatively close, the undersigned concludes that the evidence presented falls short of the quantum of evidence needed to affirm. Therefore, this case must be remanded for additional review of all three issues.

## II. Analysis

### A. Judicial Standard of Review

To be eligible for benefits, a claimant must be under a "disability" within the definition of the Social Security Act. See 42 U.S.C. §1382c(a). Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986).

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal

quotation omitted). In conducting this review, the court should consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports the ALJ's denial of benefits, then that finding must be affirmed, even if substantial evidence also exists in the record to support a finding of disability. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion. . .. The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts. If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.* (citations omitted).

In considering an application for disability benefits, the Social Security Agency is guided by the following sequential benefits analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial gainful activity; at Step 2, the Commissioner determines if one or more of the claimant's impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the Commissioner determines whether or not the claimant can still perform his or her past relevant work; and finally, at Step 5, if it is established that claimant can no longer perform his past relevant work, the burden of proof shifts to the agency to determine whether a significant number of other jobs which the claimant can perform exist in the national economy. *See Combs v. Com'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§404.1520, 416.920.

**B. Plaintiff's Statement of Errors**

**1. Alleged Inability to Sustain Full-time Work**

Plaintiff first argues that substantial evidence fails to support the ALJ's determination that he can sustain work on a "regular and continuing basis." SSR 96-8p at 28. Plaintiff asserts that the sheer volume of medical care that he requires for his conditions, particularly LPHS, would preclude him from full-time employment. He contends that he frequently requires emergency room care for pain. The VE testified that if Plaintiff missed more than one day per month or required occasional unscheduled breaks, he could not sustain full-time work. Plaintiff argues that the ALJ failed to specifically address this issue by determining how much work Plaintiff would miss.

This Court takes judicial notice of the fact that Plaintiff's primary physical complaint results from a rare condition. According to the National Institutes of Health, LPHS is a "kidney disorder characterized by persistent or recurrent loin pain and hematuria (blood in urine)." *See* http://rarediseases.info.nih.gov/gard/6920/loin-pain-hematuria-syndrome/more-about-this-disease, accessed on June 14, 2013. The diagnosis is one of exclusion, made by excluding other causes of the pain and hematuria. *Id.* Pain management is the primary treatment, usually through narcotics or opioids, and occasionally with intravenous opioid therapy. *Id.* Although prognostic data is lacking, "[I]t appears in many cases that LPHS resolves with time." *Id.* In other contexts, courts have noted that "[t]here is some dispute regarding whether LPHS 'constitutes a medically accepted clinical condition.'" *Brown v. BKW Drywall Supply, Inc.*, 305 F. Supp.2d 814, 818 (S.D. Ohio 2004); *but compare Cheese v. United States*, 2006 WL 2796190 at *7 (E.D. Mich., Sept. 27, 2006)(noting that plaintiff had been

placed on social security disability due to her LPHS).  In the case presented here, Defendant does not dispute the diagnosis of LPHS, but rather, argues that Plaintiff's painful condition is not so severe as to be disabling.

Despite relatively frequent visits to the emergency room, for example, the ALJ stated that Plaintiff "has not required in-patient care treatment" for pain or for his LPHS. (Tr. 25).  This appears to be a misstatement, insofar as the record reflects that Plaintiff was twice admitted to the hospital for unrelenting pain.  (Tr. 541. 650).  Defendant contends that the regulations do not support a finding of disability based solely on the number of appointments or number of visits to the emergency room an individual makes, but instead require an impairment to be established by medical evidence.  Here, Plaintiff's ER visits reflected normal diagnostic testing, with most visits (but not all) resulting in discharge without admission, often following treatment with additional pain medication. The ALJ noted evidence that supported his conclusion that Plaintiff's frequent, relatively short ER visits could be at least partially explained by Plaintiff's opiate abuse and drug seeking behavior.  (Tr. 18-20, 25).  In other words, the ALJ appears to have concluded that the frequency with which Plaintiff sought medical care was not entirely due to real pain from LPHS, but was at least partially prompted by an independent desire for narcotics.  The ALJ did not find Plaintiff's opiate seeking behavior to itself constitute a severe impairment, (Tr. 25), but viewed the frequency of his medical visits through the filter of a credibility finding concerning the severity of Plaintiff's pain complaints.

Although some evidence supports the ALJ's analysis in this regard, including ER records in which medical personnel failed to observe any pain behavior and/or noted or

suspected opiate abuse (Tr. 25, citing Tr. 233, 250, 363, 487, 977), other records provide significant contrary evidence. Given that Plaintiff's "normal" diagnostic findings are not inconsistent with LPHS, that the primary symptom of LPHS is severe pain, and that the primary treatment is the administration of opiates, this facts present a close question concerning whether the ALJ properly discounted the volume of medical attention sought by Plaintiff. Despite apparently discrediting the number of medical visits based solely on Plaintiff's alleged drug-seeking behavior, the ALJ conceded that "no treating physician has indicated…abuse," and did not find Plaintiff's "*possible* opiate abuse to be a severe impairment." (Tr. 25).

By characterizing the issue solely as one of credibility rather than as drug abuse, the ALJ ignored the separate analytical framework that must be applied to substance abuse cases, in which the ALJ must determine whether a claimant would be disabled if the substance abuse were factored out of the equation. *See* 42 U.S.C. §423(d)(2)(C) and implementing regulations, 20 C.F.R. §§416.920, 416.935, 404.1525, 404.1535. Under the regulations, an ALJ must first determine whether a claimant suffers from a disability from symptoms that *include* substance abuse *before* proceeding to a determination of whether the substance abuse is a "contributing factor to the determination of a disability." 20 C.F.R. §416.1535. While substance abuse may also be considered alone in the context of credibility, this Court has not hesitated to remand other cases where an ALJ improperly conflates the sequential analysis by considering Plaintiff's substance abuse issues prior to making a determination of disability. *See Lynch v. Com'r of Soc. Sec.,* 1:12-cv-75-KLL-SJD*,* 2013 WL 264670 (S.D. Ohio, Jan. 23, 2013)(R&R adopted at 2013 WL 588888); *McKnight v. Astrue*, 1:11-cv-116-SKB-

SJD, 2012 WL 71327 (S.D. Ohio Jan. 10, 2012); *Major v. Com'r,,* 1:10-cv-530-HRW-SKB (June 30, 2011)(adopting approach of other circuits, citing *Brueggemann v. Barnhart*, 348 F.3d 689, 693-95 (8th Cir. 2003); *Drapeau v. Massanari*. 255 F.3d 1211, 1214-15 (10th Cir. 2001)); *see also Williams v. Barnhart*, 338 F. Supp.2d 849, 862 (M.D. Tenn. 2004)(reversing where the ALJ improperly considered claimant's cocaine addiction as detracting from the credibility of her complaints of seizure activity and other symptoms); *accord Trent v. Astrue*, 2011 WL 841538 *3 (N.D. Ohio March 8, 2011)("if the ALJ...determines that a claimant is disabled with substance abuse, the ALJ must then proceed to conduct a second five-step analysis ...to determine if the claimant would still be disabled without the substance abuse.").

Between January 2009 and the hearing date, Plaintiff visited the doctor or hospital a total of 83 times, a volume that arguably would be incompatible with sustained employment.[1] Like the cited cases above, the ALJ appears to have improperly discounted the Plaintiff's symptoms based upon his alleged drug-seeking behavior, rather than conducting two separate inquiries: (1) whether the symptoms (including the "drug-seeking" visits) would preclude sustained work; and (2) if so, whether Plaintiff's symptoms would still be disabling in the absence of drug abuse. Neither the Defendant nor the ALJ point to any quantitative evidence regarding what number of visits were reasonably required to treat the symptoms of Plaintiff's LPHS. Based on the record presented, the undersigned finds reversible error in the ALJ's failure to more specifically address the issue of whether the frequency of Plaintiff's need for treatment would preclude all work.

---

[1] The undersigned recognizes that a few visits were for non-severe impairments.

8

**2. Failure to Give Controlling Weight To Treating Physician's Mental RFC**

In his second assignment of error, Plaintiff complains that the ALJ failed to give the mental RFC opinions of his treating psychologist, Dennis J. Schneider, Ed.D., "controlling weight."  The treating physician rule requires the Defendant to give "controlling weight" to any treating source's opinions that are "well-supported by medical acceptable clinical and laboratory diagnostic techniques" and that are "not inconsistent with other substantial evidence" in the record.  20 C.F.R.  §404.1527(c)(2).

Plaintiff was referred to Dr. Schneider by his pain doctor, Mukarran Khan, M.D., for a psychological evaluation connected with Dr. Khan's treatment of Plaintiff's chronic pain.  During that evaluation, conducted on April 21, 2009, Plaintiff reported that he spend the majority of his day engaged in sedentary activities such as playing on the computer, watching movies, or playing Wii games, and that he had been unable to work or complete his education due to his LPHS symptoms. (Tr. 436).  Plaintiff also reported being able to help with "some" household chores such as laundry, vacuuming, and washing dishes.  (Tr. 20, citing Tr. 436).  The ALJ found that Plaintiff's reports to Dr. Schneider of his daily activities reflected "a far greater functional capacity than alleged elsewhere in the record or at the hearing."  (Tr. 25).  Despite that fact, Dr. Schneider completed a mental RFC form dated March 21, 2011 in which he opined that Plaintiff's mental abilities were "seriously limited but not precluded" in three areas, including being able to get along with co-workers, and carrying out simple instructions, and that Plaintiff's abilities were so compromised as to be "unable to meet competitive standards" in eight additional work-related areas. (Tr. 942).

9

Plaintiff argues that Dr. Schneider's opinion that Plaintiff's depression was disabling was "well supported" by Plaintiff's pain profile test, his two hospitalizations for suicidal ideation, and other evidence such as anger and crying.  However, the ALJ found that Dr. Schneider's opinions were entitled to "little weight" based upon Plaintiff's report to Dr. Schneider of his daily activities, and the fact that Plaintiff's two short hospitalizations for suicidal ideation did not involve actual suicide attempts, but were "in reality attempts to garner the attention of family members.  (Tr. 23, 26).  Additionally, Plaintiff did not follow through with recommended therapy after his release from hospitalization.  The ALJ further discounted Dr. Schneider's opinions because he treated Plaintiff only intermittently over a two year period.[2]  Last, the ALJ criticized Dr. Schneider for "relatively vague" progress notes, which did not include "much detail or observations. . .."  (Tr. 26, 20, citing Tr. 661-662).

The ALJ correctly observed Plaintiff's mental health record as a whole as "very sparse." (Tr. 26).  However, the sparse record cuts both ways in this case, because there is little in the way of "substantial evidence" to uphold the ALJ's mental RFC assessment.  For example, the ALJ cited as an internal inconsistency in Dr. Schneider's records his clinical notation that Plaintiff's depression was "stable." (Tr. 26).  As Plaintiff observes, the ALJ's analysis in this regard improperly equates the adjective "stable" with improvement, when in fact Dr. Schneider opined merely that Plaintiff's debilitating depression was unchanged.  In addition, the ALJ's rejection of Plaintiff's two hospitalizations for suicidal ideation as not sufficiently corroborative of valid psychological symptoms, based upon the ALJ's perception of the incidents as "attempts to garner the attention of family members," borders on improper medical judgment – at

---

[2]Dr. Schneider saw Plaintiff four times in 2009 after April, and a fifth time a year later.

10

least in the absence of evidence that Plaintiff's treating physicians believed that his hospitalizations were not medically necessary.

Defendant contends that Dr. Schneider's assessment consisted of "a form with boxes checked without any supporting explanation or analysis," (Doc. 11 at 17), but that is not entirely accurate. The assessment refers back to the clinical interview, a detailed single-spaced report, and diagnostic testing conducted by Dr. Schneider in April 2009, as well as the five subsequent treatment visits that revealed a "stable" (but not improved) mental impairment. While six visits to a treating psychologist may not qualify as an extensive treating relationship, the Defendant's suggestion that the ALJ may have questioned Dr. Schneider's "status" as a treating psychologist (Doc. 11 at 17) finds no support in the ALJ's opinion.

Ultimately the determination of a claimant's residual functional capacity is "reserved to the Commissioner." 20 C.F.R. §404.1527(e)(2). There is no doubt that where conclusions regarding a claimant's functional capacity are not substantiated by objective evidence, the ALJ is not required to credit those conclusions. *Cutlip v. Secretary of Health and Human Services*, 25 F.3d 284, 287 (6th Cir. 1994). Similarly, although "[g]enerally the opinions of treating physicians are given substantial, if not controlling, deference," they are only given such deference when the opinions are supported by objective medical evidence. *See Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004). Thus, "if the treating physician's opinion is not supported by objective medical evidence, the ALJ is entitled to discredit the opinion as long as he sets forth a reasoned basis for his rejection." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003).

11

In contrast to Dr. Schneider's opinions, the ALJ gave "some weight" to the much earlier April 2009 mental RFC form completed by the state agency consultant.  The ALJ explained that he was imposing additional mental limitations beyond those offered by that consultant based upon "additional medical evidence" submitted after April 2009.  The non-examining consulting psychologist's contrary RFC opinion does not provide substantial evidence to reject Dr. Schneider's opinions, primarily because her review was so limited.  At the time of that review, Plaintiff had not engaged in any real treatment, and had been hospitalized only once for suicidal ideation.  Dr. Flynn opined that Plaintiff had relatively few mental limitations.  (Tr. 423).  Even the ALJ acknowledged that Dr. Flynn "was unable to review significant documentary and testimonial evidence received at the hearing level regarding the claimant's mental status." (Tr. 22).  Yet, without citation to any particular evidence, the ALJ assessed Plaintiff as having "moderate difficulty, rather than mild difficulty, maintaining social functioning." (*Id.*).  Given the scant record, on remand the ALJ should reconsider the evidence, obtain an additional consultative psychological report if necessary, and more carefully explain the basis for the weight given to Dr. Schneider's opinions.

### 3. Credibility Assessment

As should be evident from the analysis of Plaintiff's first two claims, the heart of this case rests on credibility issues.  Despite being entitled to great deference, an ALJ's assessment of credibility still must be supported by substantial evidence.  *Walters v. Com'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997).  The ALJ discounted Plaintiff's credibility for multiple reasons.  One such reason, discussed above, was Plaintiff's

alleged drug-seeking behavior. Other reasons include alleged inconsistencies in Plaintiff's treatment records.

For example, the ALJ noted that one treatment record from an initial visit with a urologist in January 2011 states both that Plaintiff is "unemployed" and, inconsistently in the same narrative entry, that Plaintiff "works at sports/health club; going to school for paralegal degree." (Tr. 785). The ALJ heavily relied on the latter entry to discount Plaintiff's credibility, implying that he was still working into 2011. However, the ALJ also found that Plaintiff had not engaged in substantial gainful activity since the claimed onset of disability in 2008, and Plaintiff's employment records do not support any more recent work activity.

The ALJ also cited Plaintiff's "conservative…and relatively non-aggressive" pain management treatment with Dr. Khan, his alleged pursuit of a paralegal degree since his alleged onset of disability, and his failure to seek more mental health treatment. The latter evidence is not definitive. As the Sixth Circuit has noted, it may be "questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation." *See Blankenship v. Bowen*, 874 F.2d 1116, 1124 (6th Cir. 1989). Thus, a plaintiff's failure to consistently seek mental health treatment over time must be carefully evaluated in the context of the record as a whole, rather than serving as any type of "automatic" basis for discounting his credibility concerning his mental health issues. "ALJ's must be careful not to assume that a patient's failure to receive mental-health treatment evidences a tranquil mental state. For some mental disorders, the very failure to seek treatment is simply another symptom of the disorder itself." *White v. Com'r of Soc. Sec.*, 572 F.3d 272, 283 (6th Cir. 2009).

The record presented reflects that part of the reason for relatively "conservative" pain treatment (to the extent that treatment with narcotics and opiates by a pain management specialist and multiple ER visits is considered "conservative"), was due to Plaintiff's mental status. Dr. Schneider recommended that surgical treatment (implantation of a pain pump) await improvement in Plaintiff's mental health.

Evidence that Plaintiff continued pursuing a paralegal degree also appears weak; Plaintiff admitted that he was a part-time student pursuing a paralegal degree until he was unable to continue due to increased pain in 2009; medical records corroborate that report. (Tr. 949). In short, while the ALJ's assessment of Plaintiff's credibility is not wholly unsupported, the errors noted may have had an undue impact on his analysis. *Accord Hudson v. Astrue*, 2010 WL 3940985 (M.D. Tenn. Oct. 6, 2010)(remand required where ALJ failed to comply with regulatory scheme for evaluation of alcohol abuse).

### III. Conclusion and Recommendation

A sentence four remand under 42 U.S.C. §405(g) provides the required relief in cases where there is insufficient evidence in the record to support the Commissioner's conclusions and further fact-finding is necessary. *See Faucher v. Secretary of Health and Human Servs.*, 17 F.3d 171, 174 (6th Cir. 1994) (citations omitted). In a sentence four remand, the Court makes a final judgment on the Commissioner's decision and "may order the Secretary to consider additional evidence on remand to remedy a defect in the original proceedings, a defect which caused the Secretary's misapplication of the regulations in the first place." *Faucher*, 17 F.3d at 175.

Despite the errors made by the ALJ, I conclude that remand, rather than an outright award of benefits, is the appropriate course of action in this case. For the reasons discussed, **IT IS RECOMMENDED THAT:**

1. The Commissioner's decision to deny Plaintiff DIB benefits be **REVERSED;**

2. On remand, the Commissioner be directed to: (a) reexamine whether Plaintiff can sustain full-time work; (2) more clearly explain the mental RFC determination; and (3) reassess Plaintiff's credibility in light of the errors noted herein.

3. As no other matters remain pending, this case be closed.

*s/ Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

JUSTIN WEBER,                                     Case No. 1:12-cv-550

      Plaintiff,                                Spiegel, J.
                                               Bowman, M.J.

    v.

COMMISSIONER OF SOCIAL SECURITY,

      Defendant.

**NOTICE**

Pursuant to Fed. R. Civ. P 72(b), any party may serve and file specific, written objections to this Report and Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).